Whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Dennis Bogatin, and my co-counsel, Madison Ross, and I are Pepperdine students, representing the appellant, Mr. Robin Gilliland. Before I begin, I would like to reserve five minutes for my colleague's rebuttal. All right. It looks like we've already done that, so you have your ten minutes. Thank you. In this case, the District Court granted summary judgment to defendants based on an exceptionally deferential acceptance of their version of events in the face of countervailing evidence appearing in Gilliland's verified complaint. Defendants make a twofold concession. First, that the District Court erred in disregarding that verified complaint as a sworn affidavit sufficient to oppose summary judgment. And second, that plaintiff's allegation of being suffocated by Defendant Eason in an ambulance was sufficiently pleaded to raise a genuine dispute of material fact. That legal error by the District Court became a faulty prism through which the Court viewed and analyzed each of the claims on appeal, starting with the first claim. Gilliland presented tribal issues of fact that defendants' asserted penological interests do not justify violating his 14th Amendment rights. To test the reasonableness of those penological interests, courts balanced the four factors identified in Turner v. Safley. And if there is a tribal issue of fact as to any of them, the court in Jones v. Slate stated that courts need not consider the remaining factors. So just so I understand your position, you agree with the defendants that Turner is the right prism for evaluating these claims? Yes, Your Honor. OK. I mean, because it's a little bit of an odd fit because Turner seems to be more about prison policies rather than one-off ad hoc actions by individual prison officers. But I guess you're agreeing that we should look at it through Turner. Yes. I mean, I would point to the Supreme Court's opinion in Washington v. Harper, which said that Turner factors apply to all circumstances in which the need of prison administration implicate constitutional rights. And so the factors are balancing to determine whether the 14th Amendment rights can be outweighed by the prison interests. OK. And so because there are tribal issues of fact as to all Turner factors, summary judgment would be inappropriate. So for example, under the first factor, viewing the facts in light most favorable to plaintiff, a juror may conclude that there was no valid connection between the forced medical treatment and the proper justification of medical emergency caused by the fact that Gilliland skipped a few meals. So defendants claim that there was a life and death emergency when Gilliland began to refuse to eat or drink on January 14th and was found passed out in his cell. On January 21st, the director's hold notes that he was at imminent risk of death. And if no medical intervention would have would have been supplied, then he would basically die within 24 hours. But the very premise of that argument, the immediacy of the alleged emergency and the scope of danger is disputed in this case. And the resolution of that dispute must be left to a jury. Mr. Bogatin, who made the decision to use medical force or to impose medical treatment in the first instance? Was it Deputy Eason and deputy letter or someone else? Well, they were the ones who transported Gilliland to the hospital with respect to the person who made the decision on the 21st. It was whoever wrote the director's hold and authorized transportation to the hospital. But for purposes of Section 1983, the person responsible are the ones who the person's liable are the ones who actually personally participated in taking the prisoner to the hospital. And so under this court's decision in Johnson versus Duffy, liability attaches if person does an affirmative act or participates in another affirmative and others act causing the constitutional deprivation. And so in this case, when defendants Eason and Leder took Gilliland to the hospital, they said affirmatively said the hospital trip in motion and should be liable under Section 1983. And so even if there was a medical director who makes a decision that's unquestionably appropriate, that there needs to be forced treatment. If a deputy executes essentially the direction of the medical officer, the deputy who is simply complying is subject to 1983 liability. Yes, Your Honor. There is no following orders defense to Section 1983. Each person is responsible for their own acts that they perform. And I would point the court's attention to the first circus decision in Sanchez versus Pereira Castillo. In that case, while the supervisor authorized transportation of the prisoner to the hospital, the court found the officers who actually took the prisoner responsible, not the supervisors in that case. Because, again, they were the ones who affirmatively said the hospital trip in motion. And so the deputies then are duty bound, even if they have no medical training whatsoever. And even if it is a genuinely life threatening circumstance, the deputies are duty bound to make their own determination as to whether or not forced treatment is necessary. Yes, I would say so. And so and what I mean, because there's a there's a question not only of constitutional violation, but also clearly but also qualified immunity. So what what case clearly establishes the proposition of law underlying the answer you just gave to Judge Blumenfeld? I would say I would say Ronald's versus Rosendale is the case from this circuit from 1974. In that case, a medical procedure was conducted and the court noted that prisoners retain their 14th Amendment right to refuse medical treatment unless the case involves a life threatening emergency or it would complying with or allowing the prisoner to refuse would endanger the security and safety of the prison. And so in this case, viewing the facts in light most favorable to Gilliland, there was no medical emergency in that factual basis. Right. But if the if the office. Well, I mean, I mean, there's another distinction, which is that there we referred to. I think it was the phrase the court used was major surgical procedures, not diagnostic tests. But setting that aside for a moment, when the officer is advised by medical personnel that there is a threat to the prisoner's life, what is the case that clearly establishes that he's supposed to second guess that? Well, I would point just not in this context of medical emergencies, but Johnson versus Duffy clarifies that the officers individually are liable for affirmatively setting that trip in motion that will result in nonconstitutional violation. There wouldn't be any liability necessarily for if the officer, for example, thinks that taking the prisoner to the hospital is warranted. And then the jury assesses that and finds, for example, there is no there was no need to take him to the hospital. And so in this case, particularly, there is this tribal dispute of fact between those two. And the resolution of that dispute must be left to a jury to assess with respect to Ronald's mentioning of a major surgery or some kind of procedure of that sort. This court in Galvin versus Duffy, for example, found law clearly established in a case of a tooth extraction. And so there isn't necessarily need for a kind of a major surgery on that point. Galvin was unpublished, right? Yes. So that doesn't that doesn't clearly establish any principle that applies here, does it? Yes, but I would say that Ronald's should not be limited to a major surgery of that sort. Any sort of medical treatment would be sufficient to be for the law to be clearly established under those facts. And here viewed the facts in light most favorable to the plaintiff. The situation is that Gilliland skipped two meals on January 14th and then he ate dinner and then skipped the next few meals. And then he was forcefully transported to the hospital against his will. That is the factual basis on which qualified immunity is assessed. And under those facts, Ronald's is clear that the law is clearly established. And are all those facts clearly or were those facts clearly within the knowledge of deputies? Of course. Yes. I mean, in the ambulance, for example, Gilliland refused to answer questions at various points. He made it clear that he is refusing medical treatment. No, but I mean, did did Deputy Eason know all of the surrounding facts that led to a medical staff determination that hospitalization and forced treatment might be necessary? Well, he certainly knew from the fact that in the jail logs, for example, it specifies that he was skipping meals. And then the emergency services were activated and then he was called to transport him to the hospital. So it is reasonable to conclude a reasonable jury may conclude that there was awareness of the fact that he was refusing medical treatment. And so going back to the Turner factors, viewing the facts in light most favorable to Gilliland, there are tribal issues of fact as to all of them, which would warrant reversal under those factors. In the remaining time, moving to the excessive force claim, Gilliland presented tribal issues of fact. The defendants, Eason and Ledare, used excessive force against him maliciously and sadistically, which was harmful enough to violate the contemporary standards of decency. And defendants concede that they had the district court consider the evidence in the verified complaint as sufficient to oppose summary judgment. It would have found tribal issues of fact with respect to Eason's conduct in the ambulance. And while that alone requires reversal, the same reasoning should extend to the other claims at hand. You're on. I see that my time is about to expire. I would just reserve the rest of my time for your counsel. We'll have a council of five minutes for rebuttal. Thank you. Thank you. Miss Plaza. Good morning, Your Honors. May it please the court and counsel. My name is Rebecca Plaza, and I am one of the attorneys for the defendant appellees in this matter. I'd like to clarify that for purposes of appeal, there were a number of individually named defendants in this matter. The only ones remaining unappealed whose dismissals are not being contested or are being contested are deputies Letter and Eason and Lieutenant Randall. The county was never a party to this litigation and is not a party on appeal. I would like to start out by recognizing, as Mr. Bogatin stated for the court, that the there was a verified complaint. We do not. We do not disagree. And that was not proper. That was not considered by the court on summary judgment. However, we disagree respectfully that the verified complaint impacts anything other than the Eighth Amendment excessive force claim against deputy Eason in claim one. That it does not carry the day as to the reversal or return on remand to the other claims against the other defendants. And with regard to deputy Eason, that the remand would be simply for the allegations that he used excessive force during an ambulance transport to the hospital in claim one, which was on January 16th of 2022. For purposes of appeal, we believe that both deputy Eason and deputy letter for similar reasons are entitled to qualified immunity. So I'm focusing primarily on the second prong of the qualified immunity test. As your honors began to ask questions earlier in the remarks there, there was no clearly established law at the time, starting with deputy Eason, that simply being asked to activate EMS and transport an individual to the hospital at the direction of respected medical providers. That deputy Eason in carrying out that transport to the hospital and staying with Mr. Gilliland at the hospital while he received the treatment medical staff believed was required to medically clear him and return him to the hospital. That is not unconstitutional that he had a convicted prisoner outside of a correctional setting, which is inherently dangerous in his care and custody that he used restraints and reasonable use of force, which I don't think is disputed by the parties that he held Mr. Gilliland down at times to ensure the safety of Mr. Gilliland and others while medical treatment was performed by hospital staff, that there would have been any case at the time that would have put deputy Eason on notice that his conduct was unconstitutional. We believe whether that is analyzed under the 8th amendment, which the district court judge did, or whether it's analyzed now and appeal under a 14th amendment right to refuse medical treatment under either theory, there is no clearly established law. The how important is it to your theory that the deputies thought that they were dealing with a medical emergency where there was potentially a threat to his life? I don't believe the record suggests that deputy Eason or deputy letter had the requisite capability of substituting their judgment for that of medical professionals. The only thing in the record before the court is that deputy Eason was asked to activate EMS and once paramedics responded to the prison or the jail, excuse me, and were unable to treat him within the jail that he was asked to take him to the hospital. I don't know that either deputy Eason or deputy letter being non-trained medical professionals are required to determine what is and isn't an emergent medical situation. They are in Lemire versus California Department of Corrections that's cited in our materials. That's a 9th Circuit case from 2013 indicates that the non-medical correctional staff can rely on the medical judgment of those present. And so regardless of whether it constituted a medical emergency and what was meant by that, neither deputy Eason nor deputy letter would have been in a position to substitute their judgment and criticize the determinations of the medical staff. Again, the case that counsel cites to Galvin v. Doofy is an unpublished memorandum disposition. It does not bind this panel. They also say to Runnels v. Rosendale and to suggest that that that defined the constitutional right. Neither are analogous facts. I would point out to the court that we are talking about non-medically trained jail deputies. These cases, including Galvin v. Doofy and Runnels v. Rosendale, the defendants were medical providers. They were dentists for Galvin v. Doofy and they were two physicians for Runnels v. Rosendale. There is no case on point regarding a corrections deputy who would have been in similar circumstances being directed to take a prisoner to the hospital for medical treatment at the behest of the medical professionals. There is no case clearly establishing that. I take the argument on the other side to be that what you have here is somebody who skipped a couple of meals and this all seems like a pretty massive overreaction to that. And there is, they say, at least a factual question as to whether it should have been obvious to somebody that this was all wildly disproportionate to what was going on. So why are they wrong to say that that's basically a factual question for the jury? I don't believe their argument stands with the individually named defendants present in this case. The public body is not a defendant. The individuals charged with making those determinations are not defendants. The only defendants are the corrections deputies who are directed to take them to the hospital. There is nothing in the record that shows that Deputy Eason had a choice in going to the hospital with him. He was directed to do so. Additionally, I understand there are factual disputes with the record as replete with concerns that he was found passed out in his cell, that he was acting in a way that was concerning, that the great burden the Eighth Amendment places on not just medical but jail providers to ensure that there is timely and adequate access to medical treatment for those in their care and custody is a concern that is taken very seriously. And the argument that we overprotected this individual when we believed, when ultimately the public body, who is not a defendant, believed that the circumstances required immediate medical care, we would be standing here for a totally different reason under an Eighth Amendment claim if we did not provide that care and he became seriously ill or died. So for those reasons, we believe that it is not proper to maintain this claim against the individuals they are maintaining it against. Ms. Plaza, could I have you just pivot for a moment to the claim with respect to Deputy Lederer and that Deputy Lederer and his partner used excessive force in dragging Mr. Gilleland into the hospital. And there we do have to accept, do we not, the verified allegations of Mr. Gilleland? Your Honor, the only verified allegation that Mr. Gilleland has for Claim 3 involving Deputy Lederer is that he yanked Mr. Gilleland from the transport vehicle and dragged him into the hospital under an involuntary hold. The other allegations that Mr. Gilleland's counsel acknowledged in reply that were present in the opening brief regarding slamming Mr. Gilleland's head were not directed at Deputy Lederer, but a different deputy altogether. I do understand that, but if you would kindly focus, though, on the allegations that are at issue with respect to the actions, which, as alleged, seem fairly brutal, dragging Mr. Gilleland face down and causing substantial injury to him. So what I would, I would direct the court to 2 ER 247, which is the, it is the involuntary hold. It was not required. Pardon me. It was put into place by the county mental health director. And it required the involuntary treatment of Mr. Gilleland. Again, to the I'm focusing on qualified immunity on prong to recognizing that the court may find that Mr. Gill and has pled facts that would constitute potentially a constitutional violation, a light, most favorable to him. However, under the qualified immunity analysis, particularly for Deputy Lederer, he was transporting and directed to transport Mr. Gilleland to the hospital on January 21st of 2022 under a involuntary commitment hold, which, while not expressly stated, does imply that there will be some amount of reasonable force in bringing an involuntary individual into the hospital for treatment. And I am focusing for purposes of my questions on the execution of the order, not the reason for the order being given. And reasonable force is the key phrase. Does Gilleland's complaint suggest that the amount of force was reasonable? Mr. Mr. Gilleland's complaint does. I would I believe he has alleged under the eighth amendment, the deputy letter used excessive force in bringing him in the hospital and also in maintaining. And also a separate 14th Amendment claim against deputy letter for remaining in the hospital, ensuring that he received involuntary treatment. Again, even if the facts were in dispute, there is no clearly established law. We are unable to find any case in which a deputy or or officer or some type of correctional staff was directed by an involuntary hold issued by a under statute. It's not a court order under statute, a statutory hold directing his involuntary treatment at the hospital that the force used in removing him and bringing him into the building where the treatment was required. To be performed, that that was unconstitutional. And what's the upshot of that? Does that mean that no matter how much force is used, even if it is extraordinary force dragging someone by their legs face down? I'm not suggesting those are the allegations here, but if that were done, would that be sufficient to avoid qualified immunity? Because there's no specific case on point. And then I understanding that he know it is not we are not advocating for any force in any circumstances would would be constitutional in any setting. We are arguing that the force, the reasonable amount of force here in this setting was appropriate, was not unconstitutional. And I would like to clarify that the allegation is that he was held by the armpits and dragged into the building. So in that set of circumstances, again, could there have been other ways in which he would he could have brought in noncompliant individual in an involuntary hold, perhaps? But those are not our facts. And the law does not clarify that Deputy Easton was not entitled to use that reasonable amount of force to get or, excuse me, deputy letter to get him into the hospital for further evaluation. I'd like to with the remaining time. And I would say that because it is. Yes, it's just cool if I could interject. I was interested in the issue raised by just my question is on your motion for summary judgment. Don't we have to give all reasonable inferences. To to the plan. Yes, your honor, the standard is in light, most favorable to the non moving party, which in this case was Mr Gilliland. However, I assume taking his factual allegations in the light, most favorable to him, which are not that he slammed his head into the car, which was attributed to a different deputy. The fact that he instead removed him from the vehicle and dragged him into the hospital by his armpits, that that was the alleged force that that force in these circumstances, looking at prong to the qualified immunity analysis. There was no clearly established law at the time that put deputy letter on notice that he was required to transport Mr Gilliland into the hospital on the involuntary hold by some other manner. And that is your honor counsel. Do you have any authority, saying that the establishing of what what's established law can be can require such a particular distinction. As you're making here. I'm asking because it seems to me it's normally it would be a reasonable inference. that if a person is dragged, dragged into a hospital, rather than carry, carried it could cause harm. And so the dragging seems basically like excessive force. And I would generally be relying on Escondido versus Emmons, which is the United States Supreme Court case, which indicated that defining clearly established a lot too high a level of generality instead of evaluating the specific circumstances of the case can be problematic. And here we don't have any cases on point. None of the cases that Mr Gilliland cited in his brief even get close to any sets of circumstance. They are very focused on the excessive force allegations regarding slamming his head, which, as the record bears out, is not actually an allegation alleged against deputy letter. And I see my time is up. I would like to thank the court and counsel. Any further questions. All right. Thank you. Ross running your honors. My name is Madison Ross appearing on behalf of appellant Mr Gilliland. I have two main points I would like to address on rebuttal, specifically involving the Fourth Amendment 14th Amendment right to refuse medical treatment, and the eighth amendment excessive force claim against deputy leader. First, I'd like to respond to counsel's argument that recognizing Mr Gilliland's right to refuse medical treatment would give rise to an eighth amendment deliberate indifference claim. Courts have consistently rejected the false choice between these two constitutional principles and held that when an inmate knowingly and affirmatively refuses treatment, then that refusal forecloses rather than creates an eighth amendment deliberate indifference claim. For example, in the case McCain v. Department of Corrections, this court held there was no deliberate indifference where a disabled inmate brought a claim that he was denied a wheelchair because the court found he repeatedly refused treatment, including refusing to attend appointments to assess his wheelchair needs. Similarly, in the case Jones v. Smith, the Second Circuit held that an inmate who refused physical therapy for a back injury failed to state a claim under the eighth amendment for deliberate indifference. Here, like the inmates in McCain and Jones, Mr Gilliland repeatedly and unmistakably refused care, both verbally and physically. On the 16th, he said no when asked to wear a hospital mask. He shook his head indicating no. He refused to exit the patrol vehicle, declined testing. And at 2 ER 279, we have a medical report from Lebanon Community Hospital, the first hospital he was taken to, which says patient refuses to answer screening questions and repeatedly states to deputy that he refuses all care. Mr. Ross, isn't the problem here that to the extent that there was a wrongful decision to require care, the decision maker is not before us. Rather, a deputy who is being asked to execute the requirement who has no medical training and no ability reasonably to assess and make the type of balancing that would be required. That person is not before us. Yes, your honor, I would like to reiterate what my co-counsel said, that there's no just following orders defense in the Constitution under the case Sanchez. The court rejected arguments that would insulate individuals from liability simply because they were acting under the direction or encouragement of others, emphasizing that each actor's conduct must be evaluated for its causal role in the constitutional violation. Each actor must independently assess the constitutionality of their actions. I understand the point, but isn't it reasonable for a deputy who has no training, who is being told that medically necessary treatment is required, that it is an urgent circumstance and sees someone who is not complying. And in his mind, it is necessary for there to be compliance and treatment to impose a certain level of force necessary to make sure the treatment is carried out potentially, your honor. But this hinges on the fact that whether or not the deputies believed this force must have been effectuated, they believed there is a medical emergency is a dispute in this case requiring reversal because there is a tribal issue of fact. Can I ask you to turn to the claim again? I guess this is claim three against deputy letter relating to the dragging into the hospital. So we have we have a declaration from deputy letter and then we have the verified complaint and we're on summary judgment. And so because the complaint is verified, we can look at that. And I guess my question is, when you read what he actually says about deputy letter, it is very brief and rather conclusory. And so my question is, why? Why is that enough to create a genuine dispute of fact as to whether there was actually excessive force used? Your honor, I would we would respectfully disagree that the language is conclusory in the complaint. It states that deputy ledera grabbed his left shoulder slash arm and he was drugged face down into Good Samaritan Hospital, ripping his left armpit with him, stating, if you want the pain to stop, then walk. That is based on that is a first hand account with personal knowledge, efficient details in order to sustain a claim against him for the dragging. And so you think that I mean, I'm not sure. What do you understand the face down part of that to mean that his face was in contact with the ground? Because I understand how you could grab someone by the shoulder unless you yourself were like almost on the ground. So what's what's your understanding of what he's alleging there? I believe the record is somewhat unclear, but from my understanding, his legs were dragging and he was facing the ground. I don't believe that his face was actually making any contact with the pavement. And so is it your view that holding someone by the armpit and moving them such that their feet are dragging on the ground is is just per se excessive force? Not per se excessive force, your honor, but it is excessive force in this case because the Hudson factors hinge on proportionality. The case, Belle v. Williams is instructive here. There they had a disabled inmate who was amputated from the leg down and they had to move him from one jail cell to another. The officer carried him over his head in a way where he suffered a similar injury to his armpit, to his shoulder. And the court found that that was clearly excessive based on what was warranted to move him because they could have used a wheelchair. Here, there's no better place to find a wheelchair than directly in front of a hospital. And that would have been a less intrusive way, less excessive way to transport Gillend into the hospital. And you said causing a similar injury to his shoulder. But is there any allegation that this resulted in any injury to his shoulder or even that it was painful to his shoulder? I believe my time may be up. Well, you can you can answer the question. There is evidence that he did suffer bruising and he alleges that his armpit was ripped. We have medical grievances from him stating that he was still suffering pain within his shoulder for several months afterwards. And he did show the bruising to his criminal defense attorney, Tyler Reed. And we see that in claim four in his verified complaint. So there is evidence that he suffered injury. And the standard is that injury need only be more than de minimis. So thank you. Barring any further questions, we respectfully ask this court to reverse and remain seated. We thank both counsel. Oh, I'm sorry, Judge Gould, please. I have one question. A number of hospitals I've been familiar with at the entranceway to the hospital have lots of wheelchairs. So people can be taken in by wheelchair. In this case, were the officials, Mr. Officer Letter and anyone else able to lift your client into the wheelchair? And does the record show us anything about availability of wheelchairs at the hospital? To the last point, we do not have anything in the record that suggests there was availability. But I believe it would be a reasonable inference that there would be a wheelchair that could be available. And while we view the evidence in the light most favorable to Gilliland and accept his allegations, if we look at Lederer's declaration, he states that he carried Gilliland into the hospital in a way where Gilliland's knees were at a 90 degree angle. So, yes, he if we were to accept his allegations, then he would have the sufficient strength in order to lift Gilliland into a wheelchair. If I may just follow up. You would acknowledge, would you not, Miss Ross, that the panel should consider all of the surrounding circumstances, including some of the circumstances that we're, to some extent, speculating about at this point, correct? I'm sorry, could you clarify what you mean? So, in other words, we should consider all of the surrounding circumstances, not simply the act itself of moving your client from point A to point B. We're talking now about alternatives that might have been required. And you're saying we should consider those, correct? Yes. We should also consider the surrounding circumstances, including the fact that Deputy Lederer was in an emergency bay, as I understand it. And there was another ambulance that was or an ambulance that was coming up. And he had to make a fairly quick decision about transporting your client into the hospital. Am I recalling the record correctly? You are, Your Honor. And we agree that there may have been some time constraints there, which necessitated getting Gilland into the hospital in a rather quick manner. However, that would only affect the second Hudson factor, which says that the need for the force, the reason that the force needed to be effectuated. However, the Hudson factors hinge on proportionality. So we understand there was a time constraint, but that does not mean that in the process they had to inflict force on Mr. Gilland when they had available and readily available options. Thank you. Thank you, Your Honor. We respectfully ask this court to reverse. Thank you, Ms. Ross and Mr. Bogatin. You're representing your client, Pro Bono, and the court thanks you for your service. We thank all counsel for their helpful arguments. The case is submitted and we are adjourned.
judges: GOULD, MILLER, Blumenfeld